## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### Civil Action: _____

|  |  |  |
|---|---|---|
| | ) | |
| **LISA N. CONE-SWARTZ,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **PRESS GANEY ASSOCIATES, INC.,** | ) | |
| **Defendant.** | ) | |
| | ) | |

The plaintiff, Lisa Cone-Swartz, complaining of defendant, alleges the following:

### JURISDICTION AND VENUE

1.   Plaintiff has instituted this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et. seq., as amended,* to recover damages for the violation of her civil rights. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. § 1331.

2.   The acts described herein occurred within, and defendant transacts business, in the Middle District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

### PARTIES

3.   The plaintiff, Lisa Cone-Swartz, is a resident of Raleigh, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendant within the meaning and definition of ADA, 42 U.S.C. § 12111(4).

4.   The defendant, Press Ganey Associates, Inc. is a corporation established pursuant to

the laws of the State of Indiana. Defendant is engaged in improving the patient experience by partnering with and supporting healthcare providers. Upon information and belief, the defendant's headquarters are located in South Bend, Indiana. At all times pertinent to this action, defendant employed over 200 employees and was the "employer" of plaintiff within the meaning and definition of the ADA, 42 U.S.C. § 12111(5)(A).

## FACTS

5.   The plaintiff was hired as a vice president responsible for developing a new business unit in February 2007 and, most recently, the vice president of new market strategies. Plaintiff remained as a vice president from her initial hire through January 2013. At all times, plaintiff had excelled in the performance of her duties and had received satisfactory employment reviews as well as performance-based bonuses, if applicable.

6.   Plaintiff was diagnosed with early-onset Parkinson's Disease in 2008 after she began noticing a right hand tremor. By late 2008, the plaintiff began experiencing visible tremors. Parkinson's disease is a progressive disorder of the nervous system. The symptoms of Parkinson's disease, such as tremors, slowness of movement, and soft speech, gradually develop over the course of the disease.

7.   In 2008, plaintiff apprised Mel Hall, Chief Executive Officer, and Marcia Brandt, Senior Vice President, of her diagnosis. From 4th quarter 2008 onward, plaintiff's role within the defendant's business was consistently diminished. Throughout this time, several peers of plaintiff's were awarded promotions not based on the performance metrics widely used by the defendant to track all executive-level employees.

8.   In July 2012, Plaintiff was made the vice president of new market strategies. At the

same time, several of plaintiff's peers were awarded senior vice president positions without competition. When plaintiff asked her direct manager, Patti Cmielewski, why she was not promoted, her manager stated that such promotions would be considered for those executives, including the plaintiff, who followed a "defined path" in relation to the business's goals. No further information was provided to plaintiff regarding this "path."

9.  Concerned about this prior conversation, Plaintiff scheduled a meeting with Ms. Cmielewski on August 14, 2012. Plaintiff asked for Ms. Cmielewski to provide regular feedback on plaintiff's performance as well as the defendant-company's expectations for the new position as part of a reasonable accommodation. Ms. Cmielewski professed her concern and asked if plaintiff might need any other accommodations, such as travel restrictions. Plaintiff assured her manager that no such additional accommodations would be needed at that time. No further discussion regarding the accommodation request was held between plaintiff and any representative of the defendant.

10. From that point forward, plaintiff was continually isolated from her involvement with the business development activities of defendant. From September through December 2012, plaintiff was only included on one conference call with this group when previously she had been part of dozens (outside of the acquisition referred to below).

11. Plaintiff was pushed out, not notified, or otherwise prevented from participating in many of these same phone calls and meetings, detrimental to her job performance, over the next four months.

12. Further, the plaintiff was prevented from attending the Leadership Meeting at the PG National Client Conference when she had participated every year since her hire in 2007. No reason was given beyond budgetary excuses.

13. On October 8, 2012, plaintiff received a phone call stating that she needed to offer another manager, Jonathan Black, immediate team management and support on a potential acquisition target. Plaintiff was told to hand off all of her other projects and wait for further instructions from Mr. Black. At no time was plaintiff advised that this single-project assignment was performance related.

14. However, Plaintiff was set up to fail: she was not given access to the acquisition team and was left out of phone calls, before finally being dropped from all discussions on the acquisition platform. There was no feasible way for plaintiff to manage this project if she was not allowed access to the team itself and all available information.

15. Throughout this time, plaintiff was also prevented from meeting with or establishing priority opportunities for the executive level leadership. Such a position requires direct lines of communication, including phone conversations and in-person meetings. These meeting requests were continually denied by management when they previously had not been.

16. In December 2012, the defendant began a planned reduction in force (RIF). Plaintiff spoke with human resources about the RIF and was advised that plaintiff would not be included. Plaintiff was also advised that the request for accommodation had never been shared with human resources.

17. Over the coming weeks, plaintiff heard from many other of defendant's executives that she was part of the RIF. However, on December 13, 2012, the plaintiff did not receive any further notification from human resources about the RIF; thus, plaintiff was still employed by defendant.

18. On December 17, Plaintiff asked the Chief Human Resources officer to transfer the

plaintiff to another manager who would not deny her reasonable accommodation or permit the plaintiff to become part of the RIF.

19. On December 18, 2012, plaintiff learned from her manager Ms. Cmielewski that she had been placed on a performance improvement plan for issues that, if true, stemmed from her disability and denial of the reasonable accommodation requested in August 2012.

20. Plaintiff reminded her manager about the reasonable accommodation request, but Ms. Cmielewski in response said, "executives should not need that kind of communication," "it's been a busy time," and "I have other things I am working on."

## ADMINISTRATIVE REMEDIES

21. On or about January 18, 2013, plaintiff filed her Charge of Disability Discrimination with the Equal Employment Opportunity Commission (EEOC) in Raleigh, North Carolina. Plaintiff's charge alleged disability discrimination in the denial of plaintiff's reasonable accommodations.

22. On or about September 17, 2013, EEOC issued a notice of plaintiff's right to sue with respect to her charge against the defendant.

23. Plaintiff has complied with all procedural prerequisites to filing this claim.

## CLAIM FOR RELIEF

### Count 1
### Disability Discrimination in Violation of the ADA

24. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

25. Plaintiff is a qualified individual with a disability since she suffers from a physical or mental disorder and has been subjected to prohibited actions because of it. 42 U.S.C. §12102 (1), (3).

26. At all times pertinent to this action, plaintiff has been able to perform the essential

functions of the job on behalf of defendant.

27. Defendant wrongfully and intentionally discriminated against plaintiff because of her disability in violation of the ADA by failing to provide a reasonable accommodation to plaintiff when requested by her.

28. As a proximate result of defendant's illegal acts of disability discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits; other economic damages; mental anguish and emotional distress; loss of professional reputation and quality of life; and other damages to be proven at trial.

29. Plaintiff is entitled to appropriate relief pursuant to ADA, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 A.D.A § 12117(a).

30. Defendant engaged in disability discrimination against the plaintiff with reckless indifference to her federally protected rights. Accordingly, plaintiff is entitled to punitive damages pursuant to 42 U.S.C 1981a(b).

## Count 2
### Intentional Infliction of Emotional Distress

31. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

32. Defendant, by and through its agents, intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from its conduct.

33. Defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

34. Defendant's actions caused Plaintiff severe emotional distress.

35. As a direct and proximate result of the defendant's unlawful conduct, Plaintiff suffered and will continue to suffer mental anguish so serious and of a nature that no reasonable man could be excepted to endure it and for which the defendant is liable.

36. Plaintiff is entitled to punitive damages based on the defendant's egregious conduct.

## PRAYER FOR RELIEF

The plaintiff hereby requests the following relief:

(1) That plaintiff recover of defendant back-pay and all benefits;

(2) That plaintiff recover compensatory damages in an amount in excess of $202,000.00;

(3) That plaintiff recover punitive damages in an amount to be determined by the jury;

(4) That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required under 42 U.S.C. § 12117(a);

(5) That plaintiff recover pre-judgment and post-judgment interest in all damages awarded herein; and

(6) That this Court grant such other relief as it deems just and appropriate.

**Request for Jury Trial**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This the 16th day of December, 2013.

/s/ Sarah K. Thacker_____
Sarah K. Thacker
Attorney for Plaintiff
NC Bar No. 40118
Thacker Law Firm, PLLC
125 Edinburgh South Drive
Suite 104
Cary, NC 27511
P: (919) 275-0895
F: (919) 800-3897
sarah@thackerlawfirm.com